*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BROOKS, Minors.

UNPUBLISHED
July 17, 2026
9:47 AM

No. 379585
Newaygo Circuit Court
Family Division
LC No. 25-010106-NA

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his two minor children RB and BB under MCL 712A.19b(3)(b)(*i*) (parents act caused injury or sexual abuse to child or child's sibling), (j) (reasonable likelihood of harm if returned to parent), and (k)(*ii*) (criminal sexual conduct involving the child's sibling). We affirm.

## I. FACTUAL BACKGROUND

Respondent is BB's and RB's biological father. The children's mother was a respondent; however, she retained her parental rights to both children. Respondent is also the biological father of SB and the stepfather of EE.[1] SB and EE are both over the age of 18 years and are not the children at issue in this proceeding. BB and RB are in their paternal grandmother's care and custody.

In February 2025, SB contacted Children's Protective Services (CPS) and told them that respondent had sexually abused and raped her when she was in seventh grade. SB also told CPS that respondent had sexually abused her half sister EE. SB was then interviewed twice, and she stated that respondent would touch her breasts and "down there," referring to her vagina. SB also

---

[1] EE shares the same mother as SB, BB, and RB.

stated that respondent would rape her at night and tell her that she was the only one he wanted. SB also explained that she did not tell anyone because respondent threatened to kill her dog.

The state police also interviewed EE, and she confirmed that respondent would touch her breasts and buttocks and make inappropriate and "awkward" comments like "you really filled out" and "you're all grown up now." Both SB and EE also reported extensive physical abuse that occurred in the home. There was also a detailed history of substantiated CPS cases involving physical abuse by respondent of EE, GB[2], and SB, as well as domestic violence against the children's mother, his spouse. The Department of Health & Human Services petitioned to terminate respondent's parental rights regarding BB and RB because of the sexual abuse alleged by SB and EE.

In August 2025, the preliminary hearing for the petition was held. SB and EE both testified about the sexual abuse and physical abuse that they endured from respondent. The trial court then authorized the petition determining that a preponderance of evidence supported a finding that there was probable cause to believe that the facts alleged in the petition were true. The trial court specifically relied on SB's and EE's testimony.

Respondent requested an adjudication bench trial. Petitioner requested that the transcript from the preliminary hearing be entered into evidence. The trial court allowed the admission of the transcript as evidence, and petitioner rested its case. Respondent then testified, during which he generally denied the allegations in the petition and stated that, during the time when SB alleged that the abuse occurred, he was not home alone with her because he was at his mother's house or working. Respondent also testified that both SB and EE had "very low" cognitive function. The paternal grandmother also testified, and she explained that she received guardianship of SB because SB needed a guardian in light of her developmental disability. SB also testified again, during which she again detailed the sexual abuse by respondent.

The trial court issued a written opinion determining, in relevant part, that a preponderance of evidence supported the finding that BB and RB needed protection; that respondent failed to provide a safe and suitable home environment; and that the children were at a substantial risk of harm because of respondent's "neglect, physical abuse, and failure to maintain a safe and clean home environment." The trial court also specifically found that "the testimony and evidence presented establish a pattern of neglect, physical abuse, and an unfit home environment, creating a substantial risk of harm to the minors' physical and mental well-being."

In January 2026, the termination and disposition hearing was held. Petitioner again reminded the trial court that child-protective proceedings are considered one continuous proceeding and further reminded the trial court of the testimony presented at the preliminary hearing and adjudication trial, and that the preliminary hearing transcript had been admitted into evidence. Petitioner then presented the testimony from BB's and RB's therapist and the CPS worker assigned to the matter. Respondent then testified again and presented the testimony of the children's mother and two friends.

---

[2] GB was one of respondent's children. She is now deceased.

In a written opinion, the trial court terminated respondent's parental rights regarding BB and RB pursuant to MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*). The trial court specifically found that the pattern of physical abuse as described by SB and EE established neglect, and that the testimony of EE and SB about respondent's sexual abuse were "credible and corroborated." Further, the trial court found that SB's consistent testimony of respondent's sexual abuse met the clear and convincing evidence standard required for termination. The trial court also determined that termination was in BB's and RB's best interests considering the pattern of physical and sexual abuse and BB's express desire not to return to respondent's care.

This appeal follows.

## II. LEGAL ANALYSIS

## A. DUE PROCESS

Respondent first argues, for various reasons,[3] that his due-process rights were violated when the trial court terminated his parental rights. We disagree.

Generally, we review de novo whether a child-protective proceeding complied with a parent's right to due process. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). However, respondent did not preserve this issue for appeal; therefore, we review unpreserved claims of constitutional errors and adjudication errors that are raised after the trial court has terminated parental rights for plain error. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019); *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citations omitted). "An error has affected a party's substantial rights when there is a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks and citation omitted). Further, a clear or obvious error "is one that is not subject to reasonable dispute." *Id*. (quotation marks and citation omitted). The outcome of the proceeding will not be reversed unless the plain error "seriously affect[ed] the integrity, fairness, or public reputation of the judicial proceedings." *In re MOTA*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

"Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *Sanders*, 495 Mich at 409 (quotation marks and citation omitted). Respondent is not advancing a procedural due-process claim, i.e., notice and opportunity to be heard; instead, his pleadings suggest he is advancing a substantive due-process claim. "The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests." *In re TK*, 306 Mich App 698, 706; 859

---

[3] To the extent that respondent raised other arguments, we decline to address them because they were not adequately briefed and they are considered abandoned. See *In re Murray*, 336 Mich App 234, 260-261; 970 NW2d 372 (2021).

NW2d 208 (2014). "In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, DHHS policies and procedures, and various federal laws . . . ." *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021) (quotation marks, citation, and brackets omitted).

In summary, when the Department of Health and Human Services (DHHS) seeks termination at the initial disposition, it must follow essentially a four-step process. First, the DHHS must establish jurisdiction by a preponderance of evidence. MCR 3.972(C)(1). Second, the DHHS must either engage in reasonable efforts to reunify the parent(s) and child(ren) or prove "by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable efforts requirement." *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 9. Third, the DHHS must establish by clear and convincing evidence that one or more statutory grounds for termination under MCL 712A.19b(3) exists. MCR 3.977(E)(3). Fourth, the trial court must determine by a preponderance of the evidence that termination is in the children's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

In the present case, respondent first argues that the trial court violated his due-process rights because it failed to properly follow the four-step process described earlier. Specifically, respondent seems to argue that the trial court improperly took jurisdiction after the adjudication bench trial, and the DHHS failed to provide reasonable efforts before termination. Each argument is addressed in turn.

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). In the adjudicative phase, a court determines whether it may exercise jurisdiction over the children. *Id*. The DHHS must establish by a preponderance of evidence one of the grounds provided in MCL 712A.2(b). MCR 3.972(C)(1). See also *Ferranti*, 504 Mich at 15. A preponderance of evidence is defined as evidence that, "when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). We also give deference to the trial court's assessment of witness credibility because of its "special opportunity to observe the witnesses." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citation omitted). See also *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

In the present case, after a bench trial, the trial court determined that it could exercise jurisdiction over the minor children pursuant to MCL 712A.2(b)(1) and (2), which provide, in relevant part, as follows:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

-4-

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

In support of its decision, the trial court relied on SB's and EE's testimony about the physical and sexual abuse they endured from respondent. Further, the trial court relied on the substantiated CPS history involving physical abuse and the testimony that the home environment was cluttered and not clean. Accordingly, the trial court found that the testimony and evidence established "a pattern of neglect, physical abuse, and an unfit home environment."

Respondent takes issue with the trial court's findings regarding the cleanliness of the home environment. His arguments are unsupported by the record which very clearly indicated that the trial court did not take jurisdiction over the children solely because of the unclean home environment; but instead, the trial court relied primarily on the evidence of sexual and physical abuse. There was more than enough evidence presented to support the trial court's finding by a preponderance of the evidence that the children needed protection because of the abuse. Notably, both SB and EE testified consistently with each other about respondent's physical abuse of them as well as of BB, and both testified consistently with their previous statements to the police and CPS regarding respondent's sexual abuse. Further, there was a substantiated CPS history detailing respondent's physical abuse of EE, SB, BB, and RB. Notably, respondent's only evidence to contradict this evidence of physical and sexual abuse was his general denial of the allegations against him.

The trial court heard and reviewed the testimony of SB, EE, and respondent, and ultimately determined that SB's and EE's testimony along with the substantiated CPS history of abuse was more credible. See *Kellogg*, 331 Mich App at 253. We affirm the trial court's exercise of jurisdiction because respondent has failed to demonstrate the court's findings were erroneous in any way; let alone arbitrary. See *TK*, 306 Mich App at 708. Accordingly, the trial court did not err when it took jurisdiction of BB and RB pursuant to MCL 712A.2(b)(1) and (2).

Respondent also argues that the DHHS had the duty to provide services, but the only service that the DHHS provided was "a dumpster at some point, but nothing more." This argument is contradicted by the record. The trial court's adjudication order and the testimony of a CPS worker both demonstrated that the following reasonable efforts were made: "Ongoing CPS Services, . . . Parent Educator, Nurturing Parent, State Emergency Relief." Respondent has failed to provide any evidence that these efforts were inadequate. Accordingly, the trial court did not plainly err by finding that reasonable efforts were made in this case.

We further note that even though services were provided, there was no affirmative duty for petitioner to provide services to respondent because of his sexual abuse of the minor children. See *Sanborn*, 337 Mich App at 258. In the present case, the trial court specifically found that SB's testimony established that respondent "engaged in penile penetration" and this constituted criminal sexual conduct involving penetration under [MCL 722.638]. As a result there was no duty to provide services because there was "a judicial determination that the parent has subjected the child to aggravated circumstances as provided [MCL 722.638]." MCL 712A.19a(2).

-5-

The trial court did not plainly err because petitioner provided services to respondent even though there was no obligation to do so because of the presence of aggravated circumstances.

Respondent also argues the trial court's credibility determination regarding SB's testimony was fundamentally unfair or otherwise incorrect. We disagree. Specifically, respondent argues that the trial court improperly "accepted the older children's statements as true despite unchallenged flaws." Respondent seems to suggest that these "unchallenged flaws" included the likelihood that SB was "echoing" EE's testimony, the fact that both EE and SB had "cognitive deficiencies," and that respondent testified that he was not in the house with SB when she testified that the abuse occurred.

Respondent is incorrect that these supposed "flaws" were "unchallenged." Instead, the record provides that respondent's counsel elicited testimony about whether SB and EE had any sort of disabilities. Further, respondent's counsel elicited testimony from one of respondent's witnesses about how a person can tell if a person has been coached and about how respondent was not in the home with SB at the time when SB testified she was abused and raped. Lastly, respondent's counsel specifically argued in closing about the "curious" similarity between SB's and EE's testimony.

Accordingly, the record indicates that respondent's counsel brought each of these "flaws" to the trial court's attention, and ultimately the trial court rejected them and determined that SB's and EE's testimonies were credible.

In sum, the trial court did not violate respondent's due-process rights, and therefore, the trial court did not plainly err in this regard.

## B. STATUTORY GROUNDS

Respondent also argues that the statutory grounds for termination were not met. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *Sanborn*, 337 Mich App at 272 (quotation marks and citation omitted). See also *VanDalen*, 293 Mich App at 139. We review the factual determinations underlying a statutory-grounds determination for clear error. *Sanborn*, 337 Mich App at 272. "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Sanborn*, 337 Mich App at 273 (quotation marks and citation omitted). As long as one statutory ground exists, "then that one ground is sufficient to affirm the termination of respondent's parental rights." *Id*. See also *HRC*, 286 Mich App at 461.

This Court has applied the doctrine of anticipatory neglect in several circumstances including to establish statutory grounds for termination pursuant to MCL 712A.19b(3). See *In re Powers*, 208 Mich App 582, 592-593; 528 NW2d 799 (1995), superseded in part on other grounds by statute in MCL 712A.19b(3)(b)(*i*). "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted). In other

words, pursuant to this doctrine, if a parent has abused the sibling(s) of the children that are the subject of the termination proceeding, then a trial court may permissibly infer that the parent is likely to abuse the child(ren) that are the subject of the termination proceeding. See *id*.

In the present case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) (parents' act caused injury or sexual abuse to child or child's sibling), (j) (reasonable likelihood of harm if returned to parent), and (k)(*ii*) (criminal sexual conduct involving the child's sibling). It is undisputed that respondent is the father of SB, and SB is the full sibling of both BB and RB. Respondent also does not challenge that the trial court may use the doctrine of anticipatory neglect (or abuse) to infer that respondent's abuse of SB suggests that respondent is likely to abuse RB and BB. Instead, respondent seems to argue only that the trial court's reliance on SB's testimony of sexual abuse was improper.

The trial court rejected respondent's testimony that he did not sexually abuse SB or EE. It is well established that this Court should give special deference to the trial court to judge the credibility of the witnesses before it. See *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). A review of the record further provides no basis to second-guess this credibility determination.

Both SB and EE testified, and the trial court had the ability to observe them during their testimonies. Further, the record indicates that SB was consistent with her description of the sexual abuse each time she was called to testify, as well as in her interviews with the Evergreen Child Advocacy Center. The record demonstrates SB was able to recall when respondent assaulted her and gave details about where her siblings were at the time. On this record, there is no basis to disturb the trial court's factual findings that the sexual abuse occurred and that respondent was the perpetrator. See *id*.

At a minimum, the trial court's finding that respondent sexually abused SB clearly supports the finding that MCL 712A.19b(3)(k)(*ii*) supports termination because under the doctrine of anticipatory neglect, there is a reasonable likelihood that respondent would abuse the children that are the subject of the petition. Therefore, at least one statutory ground supports termination. See *Sanborn*, 337 Mich App at 273.

## C.  BEST INTERESTS

Respondent also argues that the trial court erred when it determined that termination was in the children's best interests. We disagree.

We review the factual determinations underlying a best-interest determination for clear error. *Sanborn*, 337 Mich App at 276. "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Id*. at 273 (quotation marks and citation omitted). A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake was made. *Id*. at 272. This Court should also give "due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted). A clearly erroneous decision "must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

It is well established, even if the trial court determines that there are statutory grounds that support termination, "it cannot terminate the parent's parental rights unless it also finds by a preponderance of evidence that termination is in the best interests of the children." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). The best-interest determination requires that the trial court "focus on the child rather than the parent." *MOTA*, 334 Mich App at 321. The trial court should "consider the whole record, including evidence introduced by any party." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). The trial court may also consider:

> the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home . . . [;] the child's age[;] inappropriate parenting techniques[;] . . . continued involvement in domestic violence . . . [;] visitation history[;] the parent's engaging in questionable relationships . . . [;] the child's well-being in care[;] and the possibility of adoption. [*Id.* (quotation marks, citations, and alteration omitted).]

In the present case, the trial court specifically considered the fact that BB expressed a desire not to return to respondents' care. See MCL 722.23(i). Further, the trial court noted that respondents were still living together with no plans of separating, and that there was a substantiated pattern of abuse by both respondents and domestic violence between them. See MCL 722.23(j). See also *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). The trial court also properly and specifically noted that the children were placed with their paternal grandmother. See *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

Further, the record demonstrates that BB was subjected to physical abuse by respondent. In addition, there was testimony by BB's and RB's therapist that both children expressed that they felt safe and happy with their grandmother, and the therapist testified that both BB and RB were doing very well in school and had adjusted well to living with their grandmother. See, e.g., *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022); *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). Most importantly, there was significant evidence of respondent physically and sexually abusing BB and RB's siblings. *MOTA*, 334 Mich App at 322-323.

Accordingly, a preponderance of the evidence supported the trial court's determination that termination was in the children's best interests. Notably, we must defer to the trial court's factual findings unless the findings are clearly erroneous, see *Sanborn*, 337 Mich App at 276, and respondent has failed to demonstrate that this determination was clearly erroneous. Therefore, we affirm the trial court's determination. See *Ellis*, 294 Mich App at 33.

### D. EFFECTIVE ASSISTANCE OF COUNSEL

Respondent finally argues that he was denied effective assistance of counsel. We disagree.

The question whether a party was denied effective assistance of counsel presents a mixed question of fact and constitutional law. *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022). We review a trial court's findings of fact for clear error, and the ultimate constitutional issue arising

from the claim de novo. *Id*. However, when a claim of ineffective assistance of counsel is not preserved, "this Court's review is limited to mistakes apparent on the record." *Id*. (quotation marks and citation omitted).

The right to effective assistance of counsel has been extended to child-protective proceedings. *In re Casto*, 344 Mich App 590, 611; 2 NW3d 102 (2022). To prevail on a claim of ineffective assistance of counsel, counsel's performance must have been deficient, i.e., "fell below an objective standard of reasonableness," and the representation must have prejudiced respondent, i.e., there is "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *In re CR*, 250 Mich App 185, 198; 646 NW2d 506 (2001) (quotation marks and citations omitted), overruled on other grounds by *Sanders*, 495 Mich at 422-423. See also *Casto*, 344 Mich App at 611-612. "Effective assistance of counsel is presumed and [respondent] bears a heavy burden of proving otherwise." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (quotation marks and citation omitted).

"When reviewing a claim of ineffective assistance of counsel, this Court must be cognizant of, and guard against, the bias of applying 20/20 hindsight to counsel's performance." *Casto*, 344 Mich App at 612. Further, we "cannot substitute its judgment for that of counsel's on matters of litigation strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy." *Id*. "[D]ecisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Also, counsel is not ineffective "solely because counsel pursues a risky strategy that ultimately backfires." *Casto*, 344 Mich App at 619.

In the present case, respondent advances several assertions arguing that his counsel was ineffective. Notably, respondent's argument centers on the admission of SB's and EE's testimony of respondent's sexual abuse. We address each argument in turn.[4]

First, respondent argues that his trial counsel should have consulted an expert to test the "reliability of a child's statement when it is the only evidence." This argument is meritless. It is well recognized that expert testimony is significant in child-sexual-abuse cases and that "reliability problems created by children's suggestibility give rise to special considerations related to the role of experts." *Id*. at 613 (quotation marks and citations omitted). However, this does not mean that counsel is automatically ineffective for failing to consult an expert. Instead, counsel "may be deemed ineffective, in part, for failing to consult an expert" when "the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Id*. at 612-613 (quotation marks and citation omitted). Unlike child-sexual-abuse cases in which the victim of the sexual abuse may be too young to testify so the petitioner has to use a tender-years hearing and testimony by the forensic interviewers, e.g., *id*. at 597-600, the present case required neither because SB was 18 years old and was able to testify herself. Therefore, a

---

[4] To the extent that other arguments were advanced, we decline to address the arguments because they have been inadequately briefed and therefore abandoned. See *Murray*, 336 Mich App at 260.

reasonable defense strategy would be cross-examining SB on the sexual-abuse allegations like any other adult victim of sexual abuse—a strategy that respondent's counsel undertook.

This Court addressed a similar argument in *Casto*, 344 Mich App at 611. This Court ultimately held that the failure to present an expert in Casto's case did constitute ineffective assistance of counsel. *Id*. at 614. However, there are several key differences between *Casto* and the present case. First, unlike *Casto*, SB and EE testified themselves about the abuse. Second, unlike *Casto*, petitioner did not call any experts to testify as to the reliability and credibility of SB's and EE's statements. Lastly, unlike *Casto*, in which a *Ginther* hearing was held, and expert witnesses were called to testify as to child memory and suggestibility, in the present case, no *Ginther* hearing was held, and respondent has not presented any indication as to what a potential expert would testify about.

These key differences render *Casto*'s holding inapplicable to the present case. Unlike *Casto*, the trial court was able to assess SB's and EE's testimonies through their direct testimony and ultimately determined that their testimony was credible. See *MOTA*, 334 Mich App at 320 (stating that "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it").

Likewise, the decision not to call an expert to testify was a reasonable trial strategy that we have no basis to second-guess. See *Casto*, 344 Mich App at 612-613. See also *Putnam*, 309 Mich App at 248. Notably, petitioner did not present any expert testimony in the present case, much less any expert testimony regarding SB's and EE's statements. As a result, there was no expert testimony that needed to be refuted. Instead, it was SB's and EE's testimony versus respondent's and his friends' testimony. Respondent has failed to establish prejudice or a reasonable probability that the outcome of the proceedings would have been different had he called an expert. See *CR*, 250 Mich App at 198.

Respondent also asserts that his trial counsel should have "investigated SB's suggestibility especially considering her developmental disability." As an initial matter, respondent fails to provide any evidence that trial counsel did not engage in such an investigation. Notably, at the termination hearing, trial counsel explored the possibility that SB was coached by presenting a witness that had familiarity with experiencing statements from children who were allegedly coached. Further, trial counsel also emphasized in her closing argument that SB's testimony was "curious" and echoed EE's to a point that raised questions.

In sum, the record indicates that trial counsel pursued the argument that SB's testimony was not reliable or credible; therefore, suggesting that trial counsel was aware of SB's supposed susceptibility and simply pursued a trial strategy that did not require calling an expert witness is a decision that this Court should not second-guess because respondent has failed to provide credible argument that this strategy was objectively deficient. See *Casto*, 344 Mich App at 612. See also *Putnam*, 309 Mich App at 248. Accordingly, this argument is meritless.

Lastly, respondent argues that his trial counsel should have obtained the records and video recordings of SB's interviews at the Evergreen Child Advocacy Center, and subpoenaed SB's interviewer. Respondent's fixation on the videos of these forensic interviews is puzzling because the videos were never entered into evidence and were never presented in general, and the existence

of the videos is irrelevant because SB testified at the preliminary hearing and the adjudication trial about the substance of the interviews, i.e., respondent's sexual abuse. Further, there is no indication in the record that trial counsel did not review the videos. Accordingly, respondent has failed to demonstrate that trial counsel was deficient for allegedly failing to review these videos. Respondent has also failed to demonstrate prejudice because there is no indication in the record that SB testified inconsistently with her statements in the interviews. Notably, the summary of the interviews, as stated in the petition allegations, is consistent with SB's testimony at the preliminary hearing and adjudication hearing. Therefore, this argument is also meritless.

In sum, respondent has failed to adequately establish that his counsel's performance was deficient, much less prejudicial. Accordingly, respondent's claim of ineffective assistance of counsel is without merit.

For the reasons set forth above, we find no errors warranting reversal of the decisions and judgment below. We affirm.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney

-11-